IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

GONGDA XUE,

Defendant.

CRIMINAL ACTION
NO. 18-122

**OPINION**

**Slomsky, J.**                                                                                                                              May 8, 2020

I.      **INTRODUCTION**

Gongda Xue is a pretrial detainee who is currently located at the Philadelphia Federal Detention Center ("FDC") awaiting trial. On March 30, 2020, he filed an Emergency Motion for [Temporary] Release from Custody (the "Motion" or "Emergency Motion") (Doc. No. 28). The Motion was granted by Magistrate Judge David R. Strawbridge (Doc. No. 43), who considered Xue's risk of flight and his claims that he should be temporarily released on bail in view of the COVID-19 pandemic, the attendant conditions relating to the pandemic, and how those conditions may affect him given his medical history. The Government has appealed the decision of Judge Strawbridge to temporarily release Xue on bail. (Doc. No. 45.) For reasons that follow, the Court will revoke[1] Judge Strawbridge's Orders granting temporary release on bail and setting the conditions of release (Doc. Nos. 43, 44), sustain the Government's appeal (Doc. No. 45), and deny Xue's request for temporary release from custody while awaiting trial.

---

[1]   18 U.S.C. § 3145(a) provides that "[i]f a person is ordered released by a magistrate … the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]"

II.   **BACKGROUND**

   A.   **Procedural History**

On March 28, 2018, Gongda Xue, who is a citizen of China and legal permanent resident of Switzerland, was charged in a 12-count indictment for his alleged participation in a conspiracy to steal trade secrets in the form of scientific information developed by GlaxoSmithKline and Friedrich Miescher Institute for Biomedical Research. (Doc. No. 1.) The Government moved to extradite Defendant Xue from Switzerland. (Doc. No. 8 at 4.) Xue contested the extradition. (Id.) It took 18 months for the Government to prevail and Xue was extradited to the United States and arrived in Philadelphia on December 23, 2019. (Id.) A few days later, on December 26, 2019, he was ordered temporarily detained by United States Magistrate Judge Linda K. Caracappa. (Doc. No. 5.) On December 27, 2019, United States Immigration and Customs Enforcement ("ICE") lodged a detainer against Defendant with the Philadelphia FDC requesting that he be transferred to ICE custody if he is released from pretrial detention. (Doc. No. 25 at 2.)

On January 3, 2020, the Government filed a Motion for Pretrial Detention for consideration by a United States magistrate judge. (Doc. No. 7.) In the motion, the Government argued that Defendant should be denied pretrial release because he is "a substantial flight risk due to his extensive international ties, the severity of the potential punishment, and the weight of the evidence against him." (Id. at 1.) The Government also noted that if Defendant were released, he would be immediately turned over to ICE and be placed in immigration custody. (Id.)

That same day, Defendant Xue filed a response in opposition to the Government's Motion for Pretrial Detention. (Doc. No. 8.) In the response, Defendant contended that he does not pose a flight risk because he has close community ties given his sisters' residency in the United States; that the weight of evidence against him is weak; and that, other than this case, he has never faced any criminal charges. (Id. at 6-9.) Defendant also highlighted that he abided by all conditions of

release imposed by the Swiss court during the pendency of the United States' extradition request. (Id. at 7.) He noted that he had engaged with ICE and attempted to resolve the immigration detainer. (Doc. No. 25 at 2.)

On March 16, 2020, Magistrate Judge David R. Strawbridge held a hearing and granted the Government's Motion for Pretrial Detention. (See Doc. Nos. 27, 35.) Judge Strawbridge found that after considering all the required factors under the Bail Reform Act, 18 U.S.C. § 4132(g), as well as the risk that ICE may deport Defendant if he were granted pretrial release, detention was warranted given Defendant's risk of flight. (Doc. No. 35 at 31-34.) During the bail hearing, Xue did not raise any concern about his medical condition, specifically his asthma and allergic rhinitis. (See id.)

On March 30, 2020, Defendant filed the Emergency Motion for Release from Custody. (Doc. No. 28.) In the Motion, he asked the court to reconsider the order of detention in light of his age, medical history, and the danger posed by the current COVID-19 pandemic.[2] Defendant claimed to have "a prior history of respiratory issues, including severe allergic rhinitis and asthma." (Id. at 11.) As a fifty-year-old man, he asserted his conditions put him "at a higher risk to contract the virus." (Id.) He sought temporary release from custody for a compelling reason

---

[2] On March 30, 2020, Defendant also filed a Motion to Revoke [the] Detention Order and [a] Request for Expedited Hearing. (Doc. No. 29.) That motion was filed prior to Judge Strawbridge granting the Emergency Motion for temporary release. It was filed preemptively for this Court to consider in the event Judge Strawbridge denied the Emergency Motion. (See id. at 1) (asking that "the Court stay this appeal pending resolution of the Emergency Motion by Magistrate Judge David R. Strawbridge.") Since Judge Strawbridge has granted the Emergency Motion, which is being appealed by the Government, the Motion to Revoke [the] Detention Order and [a] Request for Expedited Hearing will be denied as moot because the Court is now considering de novo whether to temporarily release Defendant from custody, which, in effect, is the equivalent of the requested relief sought in the motion (Doc. No. 29).

pursuant to 18 U.S.C. § 3142(i).[3] (Id. at 2.)  The Emergency Motion was heard by Magistrate Judge Strawbridge.

Accompanying the Emergency Motion were proposed conditions of release.  Those conditions included the signing of a $500,000 personal recognizance bond by Defendant and his sisters, the posting of his sister's residence, and GPS electronic monitoring during home confinement in a local apartment secured by Defendant's brother-in-law.  (See Doc. No. 28-2.)

On April 1, 2020, the Government filed a Response in Opposition. (Doc. No. 30.)  It argued that the speculative risk of Defendant contracting COVID-19 while in custody, even if he has asthma, is not a compelling reason to justify emergency release.  In support of its position, the Government advanced three arguments.  First, it argued that the Defendant's risk of contracting COVID-19 has been minimized by extraordinary measures taken by the Bureau of Prisons ("BOP") to limit the virus's spread.[4]  (Id. at 3-4.)  Second, the Government noted that Defendant's risk of contracting COVID-19 is entirely speculative, and that his risk of contracting the virus

---

[3]   18 U.S.C. 3142(i) provides as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

[4]   The Government noted a myriad of mitigation measures undertaken by the BOP, including: (1) screening of all inmates and staff for COVID-19 symptoms; (2) restricting access to BOP facilities to only those performing essential services; (3) establishing quarantine areas within BOP facilities for infected detainees; (4) suspending social visits to BOP facilities; (5) suspending non-essential legal visits; (6) cancelling inmate and staff travel among BOP facilities; and (7) modifying BOP operations to maximize social distancing. (Doc. No. 30 at 3-4.)  These measures are in place at the Philadelphia Federal Detention Center.  It should be noted that to date three staff members at the Philadelphia FDC have tested positive for COVID-19.  One has recovered and returned to work and the other two are currently in quarantine.  No inmate has displayed any symptoms of the virus.

4

inside prison is not necessarily greater than his risk outside the facility. (Id. at 6.) Third, the Government submitted that even if Defendant were exposed to COVID-19 inside the FDC, there has been no showing that the FDC would not be able to treat him effectively.[5] (Id.)

On April 6, 2020, Defendant filed a Supplemental Response in Support of his Emergency Motion. Attached to the Supplemental Response were treatment notes and prescriptions from Dr. Chen Yan and Dr. Luo Wei, physicians at the China-Japan Friendship Hospital in Beijing, China. (See Doc. No. 34.) The treatment notes and prescriptions are written in Chinese and Defendant provides rough, handwritten translations on each document. (See Doc. Nos. 34-2, 34-3.) According to these rough translations, in January 2017 Dr. Yan noted that Defendant suffered from a cough, shortness of breath, and chest tightness and diagnosed him with allergic rhinitis and asthma. (Doc. No. 34 at 2; Doc. No. 34-2.) He apparently prescribed a combination of Western and traditional Chinese medicine. (Id.) In addition, in a subsequent visit for a general wellness check, Dr. Wei diagnosed Defendant with high blood pressure, hyperhomocysteinemia, high cholesterol, and an enlarged prostate. (Doc. No. 34 at 3; Doc. No. 34-3.) Defendant asserts in his memorandum in support of his Supplemental Response that his seasonal allergies flare twice a year from March to June and again from September to November. (Doc. No. 34 at 3.)

On April 7, 2020, Judge Strawbridge held a hearing on the Emergency Motion. (Doc. No. 37, 60.) During the hearing, Defendant called Susan J. Fiester, M.D., as an expert witness. (See id.) Dr. Fiester testified that after reviewing Defendant's treatment notes and prescriptions from the China-Japan Friendship Hospital, and after speaking with Defendant and his family, he suffers

---

[5] The Government also argued that setting conditions of release would be meaningless because they would never be served. If Defendant were released, even on conditions, he would immediately be transferred to ICE custody. In view of this Court's ruling that Defendant Xue will not be temporarily released from custody, there is no need for consideration of this argument.

from moderate to severe asthma and is therefore at an increased risk of suffering severe COVID-19 complications. (Doc. No. 60 at 24) Dr. Fiester did not personally examine Defendant. (See id.)

On April 10, 2020, Judge Strawbridge granted Defendant's Emergency Motion and ordered Defendant temporarily released with conditions, effective April 20, 2020. (Doc. No. 44.) By agreement of the parties, the release date has been extended to May 10, 2020 to afford this Court the opportunity to consider the Government's appeal. (Doc. No. 56.) Judge Strawbridge's conditions of temporary release[6] largely mirrored Defendant's proposed conditions, with some

---

[6] In the Order Setting Conditions of Release, Judge Strawbridge imposed the following conditions:

1. Defendant shall comply with the requirements of 18 U.S.C. sec. 3142(c)(1);

2. Defendant shall be subject to home incarceration in an apartment in Chester County, Delaware County, or Philadelphia County, Pennsylvania, to be secured by his brother-in-law, Yudong Liu. Pretrial Services will inspect the apartment and notify the Court of the address and, not withstanding our order with respect to the date of execution of the order, the suitability of the proposed residence before Defendant may be released from custody. The Pretrial Service Officers as well as the Defendant and any of his representatives shall take due care in the implementation of this Order and shall fully comply with all relevant CDC guidelines.

3. Defendant shall wear a GPS electronic monitoring unit and will follow all procedures specified by Pretrial Services related to that monitoring;

4. Defendant shall not leave the apartment except for meetings with his counsel or for medical appointments;

5. Yudong Liu shall act as custodian and provide reasonable assurance to the court that defendant will appear as required and as directed by 18 U.S.C. sec. 3142(c)(1)(B)(i);

6. Defendant's passport shall remain in the custody of the FBI and/or Pretrial Services during this period of temporary release and throughout the pendency of this case;

additional restrictions, including requiring Defendant to notify the United States Attorney, the FBI, and Pretrial Services if he is detained by ICE and there is a change in his immigration detention status. (Doc. No. 44.)

Judge Strawbridge justified the temporary release based upon Defendant's proffered medical records and expert testimony. He considered Dr. Yan and Dr. Wei's treatment notes from the China-Japan Friendship Hospital and Dr. Fiester's testimony. (Doc. No. 42 at 6.) Judge Strawbridge also considered the restrictions in place at the FDC, the fact that no testing information was provided, and that while precautions are in place at the BOP, there was no information about how many inmates had been tested. (Id. at 8.) Judge Strawbridge concluded that "that asthma is a condition that can cause a person who contracts COVID-19 to have particularly severe symptoms" and this compelling reason, subject to his compliance with stringent compliance,

---

7. Defendant shall sign an appearance bond of $500,000.00 to be secured by the property located at 31 Knickerbocker Lane, Malvern, Pennsylvania 19355. Defendant and his sisters, Yu Xue and Tian Xue, and such other person holding any ownership interest in the property shall sign an agreement that said property will be forfeited in the event of Defendant's non-appearance;

8. The Defendant and his counsel will satisfy the Clerk's requirements with respect to the posting of the Malvern, Pennsylvania property. Counsel shall notify the Court when it believes that it has met the Clerk's requirements. Counsel shall coordinate with the Clerk's Office to arrange for required signatories including the Defendant to appear in the Clerk's Office to execute necessary documentation. Counsel shall further advise the Court if they believe that a Court interpreter will be required.

9. In the event Defendant is transferred to ICE custody at any time during this period of temporary release from pre-trial detention, Defendant and his counsel shall promptly notify the United States Attorney, the FBI, and Pretrial Services of any serious expectation of Defendant's release from ICE custody or any other change in his immigration detention status.

(Doc. No. 44.)

warranted his release.  Judge Strawbridge was also influenced by the fact that Defendant has no criminal history and complied with all conditions of release during his extradition proceedings in Switzerland.  (Id. at 9.)

On April 16, 2020, the Government appealed Judge Strawbridge's decision to this Court. (Doc. No. 45.)  In its appeal, Government submits the same arguments it made before Judge Strawbridge.  (See id.)  It did, however, submit additional evidence in support of Defendant's detention by disputing the severity of Defendant's respiratory condition.[7]  (Id at 1.)  It describes Defendant's respiratory issues as "asymptomatic," and submitted new, supporting medical documentation.  (Id. at 1.)  First, the Government submitted an affidavit from FBI Agent William Toland, who was one of two FBI agents that transported Defendant from Switzerland to the United States.  (Doc. No. 51-2.)  In the affidavit, Agent Toland states that when asked if he suffered from any medical conditions, Defendant did not report that he suffered from asthma or any other respiratory issues.  (Id.)  Moreover, Agent Toland notes that during the fourteen hours he spent

---

[7] Defendant initially argued that the Government should not be able to offer evidence or otherwise contest Defendant's proffer that he has severe asthma because the Government elected not to cross-examine Defendant's expert witness, Dr. Fiester, and presented no countervailing testimony when the Emergency Motion was before Judge Strawbridge. (Doc. No. 47 at 1.)  Thus, according to Defendant, the Government waived the right to contest whether Defendant Xue has severe asthma.  (Id.)  The Court disagrees because the Government's appeal is heard de novo and both parties may introduce new evidence and arguments.  See United States v. Delker, 757 F.2d 1390, 1394 (3d Cir. 1985); United States v. Knox, No. 19-190, 2020 U.S. Dist. LEXIS 53438, at *5-6 (W.D.Pa. Mar. 27, 2020) (explaining that "[t]he [district] [c]ourt may also consider any additional evidence submitted in connection with [a] motion [for review of a magistrate judge's order.]").  In fact, both Xue and the Government have presented new evidence for this Court to consider in making a de novo determination.  Xue has offered an additional letter from Dr. Fiester (Doc. No. 63), agreed to the introduction of his medical records at the FDC, and filed a letter from Xue's counsel, Marc Eisenstein, detailing conversations with Xue about his medical condition (Doc. No. 62).  While it is unclear if Defendant still maintains his initial position, the Court has considered his new evidence, and will consider the new evidence introduced by the Government and allow it to contest the severity of the medical condition.

with Defendant, which included long walks in the airport during travel, Defendant did not exhibit any respiratory difficulties. (Id.) Second, the Government filed Defendant's medical records from the Philadelphia FDC, which are referred to as the Bureau Electronic Medical Records ("BEMR") (Doc. No. 57), which cover the period from Xue's arrival on December 23, 2019 to April 16, 2020. The medical records show that Defendant did not claim at all to suffer from asthma or any other respiratory problem during two medical examinations performed at the FDC. (Id.) Further the Government notes that, "[a]s of April 16, 2020, the defendant has not reported any respiratory issue to the medical staff at the FDC . . . [and] [h]e is not prescribed any medication for any respiratory issue and is not using an asthma inhaler or any other form of treatment." (Doc. No. 51 at 3.) Moreover, Defendant did not report that he had asthma or any respiratory condition when he was initially interviewed by the Pretrial Services Officer about his medical condition. (Id. at 3.)

On April 21, 2020, Defendant filed a Response disputing the Government's characterization of his medical condition and requesting that this Court affirm Judge Strawbridge's decision. (Doc. No. 47.) The Government filed a Reply on April 24, 2020. (Doc. No. 51.) On April 27, 2020, this Court held a telephone hearing during which counsel for the parties recited their respective positions. (See Doc. No. 54.) Defendant was not on the telephone because his counsel had filed a document waiving Defendant's appearance at the hearing. (Doc. No. 49.)

### III.   STANDARD OF REVIEW

Under 18 U.S.C. § 3145(b) this Court has jurisdiction to consider an appeal by the Government of a magistrate judge's decision to release a person on bail. That provision allows a district court to conduct a de novo determination. See United States v. Delker, 757 F.2d 1390, 1394 (3d Cir. 1985). "The Court may also consider any additional evidence submitted in connection with the [appeal]." United States v. Knox, No. 19-190, 2020 U.S. Dist. LEXIS 53438,

9

at *5-6 (W.D.Pa. Mar. 27, 2020). However, "the reasons the magistrate judge articulated must be given 'respectful consideration.'" United States v. Rice, No. 11-344, 2011 U.S. Dist. LEXIS 135363, at *5 (E.D.Pa. Nov. 28, 2011) (citing United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986)).

In making the de novo determination, the Court is not bound by the Federal Rules of Evidence. See F.R.E. 1101(d)(3) (stating that the Federal Rules of Evidence does not apply when a court is "considering whether to release on bail or otherwise"); 18 U.S.C. § 3142(f) ("[a defendant] shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at [a detention] hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."). Thus, the Third Circuit has held that hearsay evidence can be admitted in detention proceedings as long as the evidence is sufficiently reliable. United States v. Hicks, 510 Fed. App'x. 167, 172 (3d Cir. 2013). "Indicia of reliability include whether the hearsay is 'given under oath, replete with detail, or supported by corroborating evidence.'" Id. (quoting United States v. Lloyd, 566 F.3d 341, 344 (3d Cir. 2009)). The transcript of the hearing before the magistrate judge may also be admitted into evidence in the hearing before the district court. Delker, 757 F.2d at 1394-95 n.3.[8]

---

[8] The Court has considered the evidence presented at the hearing held on April 7, 2020 before Magistrate Judge Strawbridge and all of the documentary submissions of the parties, which were admitted in evidence at the hearing held before this Court on April 27, 2020, and all evidence submitted after the hearing.

## IV. DISCUSSION

### A. The Analytical Framework and Other Considerations Regarding Motions for Temporary Release Pursuant to 18 U.S.C. § 3142(i)

The Magistrate Judge's temporary release order was made pursuant to 18 U.S.C. § 3142(i), which provides in part,

> [A] judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for . . . [a] compelling reason.

18 U.S.C. § 3142(i).

In light of the COVID-19 pandemic, Section 3142(i)'s potential applicability is clear, but whether relief is warranted under that Section is considered on a case-by-case basis. Federal courts have been inundated with requests from defendants seeking release from detention due to the risks presented by COVID-19. Case law on the subject has grown at a seemingly exponential pace.

This Court has made every effort to stay apprised of the latest decisions and the analytical framework for reviewing Section 3142(i) requests filed in response to the current pandemic. While there has been some discrepancy among courts about how these requests should be resolved, two guiding tenets have emerged. First, Section 3142(i) motions must be considered within the larger context of the requirements of the Bail Reform Act. Second, the generalized risk of COVID-19 is not, in and of itself, a sufficient reason to justify release. Thus, resolving Section 3142(i) motions requires an individual assessment of the movant's characteristics and circumstances in light of these two considerations. Each point is discussed below, giving meaningful consideration to the decision made by United States Magistrate Judge Strawbridge.

First, decisions by other district courts make clear that a motion seeking temporary release under 18 U.S.C. § 3142(i) includes a consideration of the Bail Reform Act as a whole. See e.g.,

United States v. Green, No. 19-233, 2020 U.S. Dist. LEXIS 75950, at *12 (M.D.Pa. Apr. 30, 2020). In this Act, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. One precept is that persons must be released so long as the court can be reasonable assured that they do not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To that end, detention is the exception; and to the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released. Id.

In assessing what, if any, conditions can be fashioned, courts are directed to consider the factors enumerated in 18 U.S.C. § 3142(g). Those factors include: (1) "the nature and circumstances of the offense charged[;]" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person," including their financial resources, community and family ties, and record of appearing at court proceedings; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4). If these factors would not ensure the safety of the community or presence of the defendant at trial, a person may be detained. 18 U.S.C. § 3142(e).

If a person is detained, Section 3142(i) provides a "limited safety valve provision," United States v. Washington-Gregg, No. 19-331, 2020 U.S. Dist. LEXIS 72355, at *14 (M.D.Pa. Apr. 24, 2020), enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). But in the COVID-19 environment, this re-examination does not take place in isolation. Rather, courts also have considered the following factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the

12

> likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Deshields, No. 19-cr-99, 2020 U.S. Dist. LEXIS 73643, at *7 (M.D.Pa Apr. 27, 2020) (citing United States v. Clark, No. 19-40068, 2020 U.S. Dist. LEXIS 51390 (D. Kan. Mar. 25, 2020)).  "The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'" United States v. Denmark, No. 19-CR-15, 2020 U.S. Dist. LEXIS 73640, at *17 (M.D.Pa Apr. 27, 2020) (quoting Clark, 2020 U.S. Dist. LEXIS 51390, at *3).  Historically, motions for temporary release under Section 3142(i) were granted "sparingly." Denmark, 2020 U.S. LEXIS 73640, at *17 (internal citations omitted).

Second, courts have generally "rejected emergency motions for release . . . based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." Denmark, 2020 U.S. LEXIS 73640, at *15 (internal citations omitted).  "Rather, at a minimum[,] courts have typically required proof of a '[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i).'" Id. (quoting United States v. Keith Kennedy, No. 18-20315, 2020 U.S. Dist. LEXIS 53359, at *4 (E.D. Mich. Mar. 27, 2020)).  Recently, in related contexts, the Third Circuit Court of Appeals has endorsed this concept, requiring proof beyond COVID-19's generalized risks when a defendant seeks release from detention.

In United States v. Raia, in considering a petition for compassionate release, the Third Circuit stated,

> We do not mean to minimize the risks that COVID-19 poses in the … prison system, particularly for inmates … But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify … release.

13

No. 20-1033, 954 F.3d 594, at *2 (3d Cir. Apr. 2, 2020).

Similarly, in United States v. Roeder, in considering a motion for release from detention pending sentencing, the Third Circuit explained that,

> [T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence[.]

United States v. Roeder, No. 20-1682, 2020 U.S. App. LEXIS 10246, at *7 (3d Cir. Apr. 1, 2020).

Although neither case involved a motion for temporary release under Section 3142(i), the concept is "equally applicable" to this Section. Denmark, 2020 U.S. LEXIS 73640, at *15; see Salley, at *11 (denying a defendant's Section 3142(i) motion and citing Raia and Roeder).

Thus, for a movant to satisfy his burden of proof under Section 3142(i), he must make an "individualized and specific showing of a compelling reason[.]" United States v. Brown, No. 19-259, 2020 U.S. Dist. LEXIS 74193, at *11 (M.D.Pa. Apr. 28, 2020). There is no "one-size-fits-all, blanket approach" to resolving Section 3142(i) motions. United States v. Nikparvar-Fard, No. 18-101-1, at *10 (E.D.Pa Apr. 20, 2020). Section 3142(i) motions based on COVID-19 related concerns require a court to "take into account the important considerations . . . which animated the original decision to detain the offender pending trial . . . [and] individual health concerns and broader public safety interests," Brown, 2020 U.S. Dist. LEXIS 74193, at *13, presented by the current pandemic.

**B. The Government's Appeal Will Be Sustained and Judge Strawbridge's Release Order Will Be Revoked**

**1. Consideration of Provisions of the Bail Reform Act**

First, the factors the Court must consider under the Bail Reform Act show that Defendant is a flight risk. As discussed supra, the factors listed in 18 U.S.C. § 3142(g) guide our review. These factors include: (1) "the nature and circumstances of the offense charged[;]" (2) "the weight

14

of the evidence against the person;" (3) "the history and characteristics of the person," including financial resources, community and family ties, and record of appearing at court proceedings; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4). Applied here, the facts and circumstances presently before the Court in this case show that no conditions of release will reasonably assure Defendant's appearance at trial.

The nature and circumstances of the offense and the evidence against Defendant support his continued detainment. He faces serious charges found by the grand jury to be supported by probable cause and the evidence against him appears to be strong. Defendant is named in a 12-count indictment alleging that he conspired with family members to steal trade secrets from GlaxoSmithKline ("GSK") and the Friedrich Miescher Institute for Biomedical Research and profit from the stolen information by creating a competing pharmaceutical company in China. The Government values the stolen information in excess of $550 million, although this amount may be contested. Defendant faces a statutory maximum penalty of 180 years in prison, three years of supervised release, a $3 million fine, and $1,200 special assessment. (Doc. No. 7 at 4.) The Government proffers that it has substantial evidence to support the charges, including seized electronic evidence tying Defendant to the illegal conduct. (Id. at 2.) In a related case, Yu Xue, Defendant's sister, has already pled guilty to stealing trade secrets from GSK. (Id. at 4.)

Defendant's history and personal characteristics also make clear that he is a flight risk. When considering this category, the relevant considerations include Defendant's financial resources, community and family ties, and record of appearing at court proceedings. In totality, these categories support his detention.

Defendant is a man of considerable means with extensive international ties. He has a Bachelor of Science in Biology from the Henan University of Technology in China, a Master of Science in Chinese Medicine from the China Academy of Chinese Medicine, and a Doctorate in Natural Sciences from the University of Zurich. (Doc. No. 8 at 2-3.) Prior to his extradition, he was a researcher at ABBA Therapeutics, a leading biopharmaceutical company located in Basil, Switzerland. He is a Chinese citizen and legal permanent resident of Switzerland. Over the past five years, he has traveled to China, Germany, and France, in addition residing in Switzerland. He also previously lived for a short period in the Czech Republic. Given his extensive international travel and personal resources, he has the wealth and connections which make him a serious risk of flight.

Defendant has no prior residency in this district. While his sisters may reside in the United States—one lives in Pennsylvania and the other lives in North Carolina—it does not appear that he has spent any time with them in the United States during the twenty years preceding his extradition. Indeed, for the last twenty years, Defendant and his family have resided in Switzerland, where he has been employed. At this point, his ties are to Switzerland and China, not the United States. Simply put, from Defendant's perspective, his tethers to the United States are minimal.

Although Defendant complied with orders to appear in the Swiss court system, his circumstances have vastly changed. In Switzerland, Defendant's incentive was to abide by the court mandated conditions of release because it allowed him to remain with his family and continue to work while attempting to defeat the United States' extradition request. Now, the gravity of his circumstances has changed remarkably. He has spent over five months in a federal prison. It would be natural for him to fear such confinement in the future, the duration of which is unknown.

The conditions of release proposed by Magistrate Judge Strawbridge involve the posting of bail and his sister's residence, but the financial concerns inherent in his situation may not overcome the fear of future incarceration. Home detention with electronic monitoring also may not be a deterrent to flight. Moreover, because he was afforded bail in Switzerland, and knowing that his sisters are out on bail, he may have believed that upon returning to the United States, bail would be afforded to him. When he first appeared before Judge Strawbridge on March 16, 2020, he was detained because he was a flight risk. But given his present circumstances, including the benefit of hindsight and a full understanding of the nature of incarceration, flight might be an appealing option.[9] The Court does not believe that the collateral posted would be a sufficient deterrent. If he fled, he could always attempt to repay his sisters for their loss.

In sum, Defendant is an extradited alien who fought extradition, with minimal community ties and the means to flee. There is no condition or combination of conditions that would reasonably assure his appearance at trial.

### 2. Defendant's COVID-19 Arguments Under Section 3142(i) of the Bail Reform Act

Second, Defendant's individual COVID-19 risk is not a compelling reason to justify temporary release. Defendant asserts that his asthma and allergies would "greatly exacerbate[] the life-threatening nature of [a] COVID19 infection." (Doc. No. 47 at 1.) But the objective evidence of the extent of his conditions rebuts this assertion. While Defendant has asthma and allergies, they are not severe enough to constitute a compelling reason to justify temporary release.

---

[9] The fourth factor under the Bail Reform Act requires considering the nature and seriousness of the danger to any person or the community that would be posed by the person's release. This factor only has applicability in regard to the COVID-19 pandemic. Apart from this consideration, the Government does not argue that Defendant is a danger to himself or the community. This factor is not as important as the one concerning risk of flight.

17

The objective evidence shows that Defendant does not suffer from asthma to the extent he claims. He never mentioned his asthma or allergies when he was questioned by the FBI Agents who escorted him back to the United States. Agent Toland asked him about his medical conditions and Defendant only stated that he suffered from high blood pressure. Agent Toland also stated that during the fourteen hours he spent with Defendant, he "did not observe [Defendant] coughing, wheezing, or experiencing shortness of breath" and that there were times when Defendant had to "walk a considerable distance." When Defendant was interviewed by a Pre-Trial Services Officer about his health, he did not mention that he suffered from asthma or allergies. His medical records from the Bureau of Prisons, which cover the period from his initial intake on December 23, 2019 through at least April 16, 2020, do not show that he told the FDC's health services staff that he has any respiratory issues. He did not claim to have any respiratory condition, even when asked about this specific ailment. He does not use an inhaler or any other commonly recognized medications for asthma. Moreover, Defendant asserts that his asthma and allergies occur from March to June, and yet through at least April 16, 2020, there is no objective evidence he had any symptoms other than from his own representation. Even on March 16, 2020, when he had his detention hearing, no mention of his asthmatic condition was raised with the Magistrate Judge.

Next, the proposed release plan is not tailored to mitigate COVID-19 risk to Defendant. As of this date, the virus has spread across the globe and especially in the United States. Although home detention may to an extent limit his risk as a form of social distancing, Defendant still faces risk of exposure. He will necessarily have contact with the outside world, whether it be for food, medical assistance, or contact with counsel. Moreover, the Bureau of Prisons has gone to extraordinary lengths to limit inmate risk and, to date, no inmate at the Philadelphia FDC has

shown symptoms of having COVID-19. If this situation changes, this Court may reconsider the decision being made on the Government's appeal.[10]

The Court recognizes that Judge Strawbridge believed that Defendant's asthma, in conjunction with the COVID-19 pandemic, would be a compelling reason to release him with conditions. But this decision was made without the benefit of the Government's objective evidence which shows that the condition is not as severe as Defendant claims. At the time, Judge Strawbridge had been presented with only Defendant's proffers about his asthmatic condition.[11] He did not have the benefit of reviewing FBI Agent Toland's affidavit or Defendant's medical records from the FDC. It is therefore understandable that he would find Defendant's medical condition to be more severe than the objective evidence now shows it is.[12]

In sum, while the Court acknowledges that Defendant may suffer from some sort of asthma or respiratory condition and shares his concern about COVID-19, his case does not present a compelling reason to justify release pursuant to Section 3142(i). The level of his asthmatic

---

[10] The fourth factor courts consider when evaluating Section 3142(i) motions in the COVID-19 environment—i.e., the likelihood that the defendant's proposed release would increase COVID-19 risks to others—is neutral. While there is concern about Defendant contracting COVID-19 if released, the risk of his transmitting it to others is too speculative to be considered.

[11] In his opinion, Judge Strawbridge stated that he was relying on Defendant's proffers about his medical condition and acknowledged that he was limited to working with the information he had been presented. (See Doc. No. 42 at 7-8) (explaining that Defendant's medical information "came to us on proffer" and that he would "work within the records that [he] [has] including the representation that [Defendant] is currently experiencing symptoms.").

[12] This Court has reached different conclusions than Judge Strawbridge about the importance of Defendant's lack of criminal history and prior compliance with the orders of the Swiss court system. As discussed above, in view of Defendant's specific circumstances, these facts are not persuasive to overcome risk of flight. Judge Strawbridge merely noted that Defendant "has no criminal history and did appear in Switzerland for proceedings associated with his extradition as required." (Doc. No. 42 at 9.) This Court believes, however, a more nuanced review was necessary given the facts presented here.

condition when considered in conjunction with the precautions in place at the FDC to prevent the spread of COVID-19 and the fact that no inmate to date has had any symptoms of the virus, all point to the conclusion that there is no compelling reason for release. Furthermore, the Bail Reform Act factors support his continued detention and the proposed conditions of release do not overcome his risk of flight. For all these reasons, the Court will revoke Judge Strawbridge's Order granting temporary release on bail (Doc. No. 43) and the Order setting Defendant's Conditions of Release (Doc. No. 44), sustain the Government's appeal (Doc. No. 45), and deny Defendant's request for temporary release from custody while awaiting trial.

## V. CONCLUSION

For the foregoing reasons, the Order granting Defendant Temporary Release (Doc. No. 43) and the Order Setting Conditions of Release (Doc. No. 44) will be revoked, the Government's appeal (Doc. No. 45) will be sustained, and Defendant's Emergency Motion for Release from Custody (Doc. No. 28) will be denied. An appropriate Order follows.[13]

---

[13] On April 10, 2020, Defendant filed a Motion for a Writ of Habeas Corpus, Temporary Restraining Order, and Preliminary Injunction (Doc. No. 41), seeking to preclude enforcement of the ICE detainer lodged against Defendant should his Emergency Motion for Release be granted. The Court need not consider that motion, however, because Defendant will remain in custody pursuant to the provisions of the Bail Reform Act. For this reason, the motion (Doc. No. 41) will be denied as moot.