IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION<br>NO. 18-122 |
| GONGDA XUE, | |
| Defendant. | |

# ORDER

**AND NOW**, this 8th day of October 2021, upon consideration of Defendant Gongda Xue's Motion to Dismiss (Doc. No. 100), the Government's Response (Doc. No. 102), and the arguments of counsel for the parties at the hearing held on October 4, 2021, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. No. 100) is **DENIED**.[1]

---

[1] On March 28, 2018, a grand jury in the Eastern District of Pennsylvania returned a twelve-count Indictment against Defendant Gongda Xue. (Doc. No. 1.) The Indictment included the following charges: one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; one count of conspiracy to steal trade secrets, in violation of 18 U.S.C. § 1832(a)(5); five counts of wire fraud, in violation of 18 U.S.C. § 1343; and five counts of theft of trade secrets, in violation of 18 U.S.C. § 1832(a). (Doc. No. 1 at 1.) On September 27, 2021, Defendant filed a Motion to Dismiss [the] Indictment. (Doc. No. 100.) On October 1, 2021, the Government filed its Response. (Doc. No. 102.) And on October 4, 2021, the Court held a hearing on pretrial motions, including the instant Motion to Dismiss.

In his Motion to Dismiss, Defendant avers that the Indictment does not allege the requisite mental state for all twelve charges. (See Doc. No. 100 at 2–3.) Specifically, Defendant argues that because "the Indictment never alleges that [Defendant] asked anyone to send him the documents that allegedly contain[ed] trade secrets, nor an allegation that he knew these documents contained trade secrets," the Indictment does not demonstrate the necessary mens rea for any of the crimes charged. (Id. at 3.) Defendant's Motion concludes: "If [Defendant] was the passive recipient of trade secrets transmitted to him by others, then, as a matter of law, he did not harbor the required mens rea to commit any of the offenses charged, requiring dismissal of the indictment." (Id.)

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. PRO. 7(c)(1); see also United States v. Bergrin, 650 F.3d 257, 264 (3rd Cir. 2011). Furthermore, it is well-settled that an indictment "returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S.

359, 363 (1956). The Third Circuit has set forth steps to determine the sufficiency of an indictment by looking at whether the indictment (1) includes the elements of the offense the defendant is being charged with; (2) notifies the defendant of what he must be prepared to meet; and (3) allows a defendant to plead an acquittal or conviction so as to invoke double jeopardy in the event of a subsequent prosecution. See United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007); see also United States v. Godfrey, 679 F. App'x 203, 206 (3d Cir. 2017).

In reviewing a motion to dismiss an indictment, a district court must be mindful that such a motion "is not a permissible vehicle for addressing the sufficiency of the government's evidence." United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000). Thus, a district court must accept the factual allegations in an indictment as true and determine whether they properly state the elements of the charged offenses. See United States v. Bergrin, 650 F.3d 257, 268 (3d Cir. 2011). Further, an indictment containing a reiteration of the statutory language is permissible, provided that the language "fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary" of the charged offenses. Hamling v. United States, 418 U.S. 87, 117 (1974). An indictment that informs a defendant of the statute they are charged with violating, lists the elements of a violation under that statute, and specifies the time period during which the violations allegedly occurred is generally considered sufficient. See United States v. Urban, 404 F.3d 754, 771 (3d Cir. 2005).

Here, the Indictment identifies Defendant's charges, notifies him of what he must be prepared to meet, and allows for Defendant to either plead a previous acquittal or conviction to invoke double jeopardy. In Count One of the fifty-two-page Indictment, the Government sets forth sixty-nine paragraphs of relevant facts and seventy-nine paragraphs describing Defendant's overt conduct in detail, including the dates of each action alleged. (See Doc. No. 1 at 1–41.) Additionally, the factual allegations in Count One apply to each of the subsequent charges, and the Indictment incorporates the relevant preceding paragraphs by reference. (See Doc. No. 1 at 42–49.) Further, in Counts One through Twelve, the Indictment alleges the correct elements of each offense, including that Defendant "knowingly" carried out the actions alleged in Counts One, Two, and Eight through Twelve, as well as that Defendant "devised and intended" the conduct alleged in Counts Three through Seven. (Id. at 24, 42–49.)

In addition, the Indictment alleges facts that directly contradict Defendant's notion that he merely was a "passive recipient of trade secrets transmitted to him by others." (See Doc. No. 100 at 3.) To the contrary, the Indictment alleges that Defendant, "attempting to do so, caused to be transmitted" and engaged with various documents containing trade secrets from his sister Yu Xue, who was indicted separately and pled guilty to conspiring to steal trade secrets from GlaxoSmithKline ("GSK"). (See Docs. No. 1 at 44; 102 at 2 n.1, 21 n. 2.) For example, the Indictment notes the following actions of Defendant after receiving the alleged trade secrets: "On October 28, 2014, [Defendant] sent an e-mail . . . referencing the ten monoclonal antibodies which Yan Mei had caused to be sent to him from China with added notes about tests which [Defendant] performed on these ten monoclonal antibodies on behalf of [Renopharma]." (See Doc. No. 1 at 37.) As the Indictment alleges, Defendant learned of the monoclonal antibodies via several documents containing GSK trade secrets, and Renopharma is the name of the corporation created by Yu Xue "to market and sell the stolen trade secret and otherwise confidential information." (See id. at 9, 11–24.) This example, paired with other allegations in the Indictment involving his personal conduct, cause Defendant's argument that he was a passive recipient to fail.

Finally, the Indictment meets the final two prongs of the Third Circuit's test. Because it clearly alleges specific facts and sets forth the elements of each charge, the Indictment notifies Defendant of what he must prepare for his defense and allows Defendant to plead a former acquittal or conviction in the event of a subsequent prosecution. While the Government must prove at trial that Defendant acted with the appropriate mens rea for each charge, the Indictment alleges the requisite mental state for each of the twelve charges and ample facts in support.

Therefore, at this stage, the allegations in the Indictment are sufficient and the Court will deny Defendant's Motion (Doc. No. 100).

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.